UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

               Plaintiff,

                                          Civil Case No. 19-11911

v.                                        Honorable Linda V. Parker

PROCTOR FINANCIAL, INC.,

               Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (ECF NO. 47)

In this lawsuit, the Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Proctor Financial, Inc. retaliated against the corporation's former employee, Angela Kellogg, in violation of Title VII of the Civil Rights Act of 1964.  The matter is presently before the Court on Defendant's motion for reconsideration (ECF No. 47) of this Court's decision denying summary judgment to Defendant on Plaintiff's retaliation claim (ECF No. 46).  The EEOC has filed a response to the motion.  (ECF No. 49.)  For the reasons that follow, the Court is denying the motion.

## Applicable Standard

Eastern District of Michigan Local Rule 7.1(h) governs motions for reconsideration. [1] As currently written, the rule provides as follows with respect to non-final orders such as the decision on Proctor Financial's summary judgment motion: [2]

> (2) Non-Final Orders. Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:
>
> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

---

[1] Defendant argues that the standard under Federal Rule of Civil Procedure 54(b) is applicable to its motion. Rule 54(b) allows district courts to grant relief from interlocutory orders "as justice requires." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (quotation marks and citations omitted). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citation omitted). The third instance, which is the basis for Proctor Financial's motion, overlaps the "mistake" and "changes the outcome" standard of Local Rule 7.1(h). Stated differently, Proctor Financial maintains that clear errors in the Court's decision must be corrected to prevent the manifest injustice of wrongly denying its summary judgment motion (i.e., changes the outcome).

[2] A prior version of Local Rule 7.1(h) was in effect when Proctor Financial filed its motion. The new version, quoted above, was effective December 1, 2021. Local Rule 1.1(d) provides that current rules apply to all proceedings pending at the time they take effect, unless, in the opinion of the court, the application of the new rule would not be feasible or would work an injustice. Here, the Court finds that application of the new rule is feasible and would not work an injustice.

(B)  An intervening change in controlling law warrants a
different outcome; or

(C)  New facts warrant a different outcome and the new
facts could not have been discovered with reasonable
diligence before the prior decision.

E.D. Mich. L.R. 7.1(h)(2).  "A motion for reconsideration is not intended as a

means to allow a losing party simply to rehash rejected arguments or to introduce

new arguments."  *Southfield Educ. Ass'n v. Bd. of Educ. of Southfield Pub. Schs.*,

319 F. Supp. 3d 898, 901 (E.D. Mich. 2018).

## Analysis

Proctor Financial identifies five "defects" in the Court's summary judgment

decision.  The Court addresses each in turn.

First, Proctor Financial asserts that "the Court was misled by the EEOC's

change to the wording of the September 12, 2016 email."  (ECF No. 47 at Pg ID

1422.)  Proctor Financial refers to an error ("this" instead of "his") in the Court's

first quotation of an email from Paul Glantz at 8:27 p.m.[3] and its insertion of a

word ("to") as a correction of a grammatical error in an email from Lisa Golden at

---

[3] The complete sentence correctly read: "Both Lisa and I have spoken with Jim on
his approach.  I believe he gets it."  (*See* ECF No. 39-5 at Pg ID 730.)

3

4:07 p.m.[4]  As an initial matter, the Court correctly quoted Glantz's email when analyzing its importance later in the decision.  (*See* ECF No. 46 at Pg ID 1397.) As such, the Court's earlier mistake had no impact on the decision.  The sentence from Golden's email played no role in the Court's analysis and reading the sentence as Proctor Financial urges does not lead the Court to conclude that a different outcome was warranted.

Proctor Financial next argues that inferences and presumptions were required to conclude from the emails that retaliation was in play and, therefore, the Court erroneously concluded that the emails constituted direct evidence of retaliation.  The Court expressly addressed and rejected this argument in the decision.  (ECF No. 46 at Pg ID 1397 ("The emails through Fall 2016 reflect a plan to wait for the opportunity to terminate or at least discipline Kellogg—specifically, the results of Kellogg's attempts to complete the State's licensing requirements. No inferences or presumptions are required.").  As stated above, motions for reconsideration are not a vehicle "to rehash rejected arguments[.]"  *See, supra*.

---

[4] The complete sentence read: "We have be [sic] extremely patient and financially helpful in her obtaining these requirements."  (*See* ECF No. 39-7 at Pg ID 732.) To correct the grammatical error in the sentence, the Court added "to" before "be" in its previous decision.  As Proctor Financial now points out, "be" could have been modified to "been" as an alternative correction  Proctor Financial maintains that this alternative correction conveys a different meaning.

In any event, the Court proceeded to analyze the EEOC's retaliation claim "even if direct evidence is lacking" (*see id*. at Pg ID 1398), and concluded that, even under that analysis, Proctor Financial was not entitled to summary judgment. As such, the correction of this claimed error would not result in a different outcome.

In its third claimed "error," Proctor Financial asserts that the Court failed to complete the direct-evidence analysis.  Specifically, Proctor Financial believes "the Court did not consider or address whether Proctor Financial 'would have made the same decision absent the impermissible motive.'"  (ECF No. 47 at Pg ID 1427 (quoting ECF No. 46 at Pg ID 1395-96) (additional quotation marks and citations omitted).)  But the Court did consider and analyze Proctor Financial's alleged legitimate, non-retaliatory reason for its adverse action against Kellogg.  (*See* ECF No. 46 at Pg ID 1400-03.)  And, again, even if the Court made a mistake when analyzing the EEOC's claim under a direct-evidence approach, it alternatively analyzed the claim applying the circumstantial burden-shifting framework. Therefore, again, correcting this claimed error would not "change[] the outcome of the prior decision[.]"  E.D. Mich. LR 7.1(h)(2)(A).

Proctor Financial next argues that the Court failed to apply the "but-for" standard in evaluating the connection between Kellogg's protected activity and her suspension.  As Proctor Financial points out, the Supreme Court held in *University*

5

*of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338 (2013), that the causal connection element of a plaintiff's prima facie case of retaliation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360. Showing that retaliation was one of the employer's motives is insufficient. *Id.*

In the summary judgment decision, the Court did not expressly indicate whether it was evaluating the EEOC's retaliation claim according to traditional principles of but-for causation or the lessened causation test in 42 U.S.C. § 2000e-2(m). Nevertheless, nowhere in the decision does the Court suggest that any factor other than Kellogg's protected activity motivated the adverse employment action. Instead, the Court concluded that a reasonable jury could find from the evidence that Kellogg's protected activity was *the* reason for her suspension. Proctor Financial argues now, as it did in its summary judgment briefs, that there were intervening causes for Kellogg's suspension. However, the Court expressly held that a reasonable jury could conclude that those reasons did not motivate the adverse employment action.

Lastly, Proctor Financial claims that the Court disregarded the legitimate, non-retaliatory reasons the corporation articulated for suspending Kellogg when evaluating pretext. This is incorrect.

6

Proctor Financial proffered two legitimate, non-retaliatory reasons: (1) Kellogg's "continued resistance to adhering to the Company's licensing requirements"; and (2) "the lack of integrity displayed by [Kellogg's] misleading actions and statements related to the New York licensing exam." (*See* ECF No. 46 at Pg ID 1400 (quoting ECF No. 40 at Pg ID 784); *see also* ECF No. 47 at Pg ID 1431.) The Court evaluated both reasons and found a genuine issue of material fact as to whether either reason was the actual or a sufficient reason to explain Proctor Financial's action. (*See id* at Pg ID 1401-03.)

As the Court explained with respect to the first reason:

> . . . for more than a year and a half after the licensing requirement was in place, Proctor Financial took no action against Kellogg or any other Claims Examiner who had not passed all the required exams during that time. It was only after Kellogg's protected activity that Proctor Financial decided she was not taking the requirement "seriously" and that this was a reason to suspend her.

(*Id.* at Pg ID 1401.) Further, Kellogg's supervisor gave her glowing reviews a few months before she was suspended even though, at the time of those reviews, she had not passed the two exams and purportedly was not taking the licensing requirements seriously. (*Id.*) The Court also found that the email exchanges preceding the adverse employment action could lead a reasonable jury to conclude that the reason was pretextual. (*Id.* at Pg ID 1402.)

Looking back, the Court's analysis of the second reason Proctor Financial proffered for suspending Kellogg could have been better explained.  Nevertheless, the Court did not intend to suggest that one of Proctor Financial's reasons for suspending Kellogg was her failure of the New York exam.  The Court did not understand this to be a reason for the suspension.  Rather, as expressly stated in the decision, the Court recognized that Proctor Financial's second reason was Kellogg's responses concerning the results of the exam, including her attempt to conceal the results when asked to produce them.  The Court concluded, and still concludes, that a reasonable jury could find that this was a pretext for retaliation.

As stated in the summary judgment decision, no other claims examiner who failed an exam was asked to submit the results.  This could suggest that Kellogg's misrepresentations concerning the actual score she received really did not matter to Proctor Financial but that it used those misrepresentations as part of its "scheme to find 'an opportunity' to discipline her."  (ECF No. 46 at Pg ID 1402.)  In other words, Proctor Financial was waiting for—and perhaps even setting up the opportunity—"for a legal, legitimate reason to fortuitously materialize" and then "use[d] it to cover up" the retaliatory reason for suspending Kellogg.  (*See id.* (quoting *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) (quoting *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007)).)

**Conclusion**

For the reasons stated, the Court finds no mistake in its summary judgment decision that, when corrected, changes the outcome of that decision.  Nor does "a need to correct a clear error or prevent manifest injustice" warrant reconsideration of the decision.

Accordingly,

**IT IS ORDERED** that Defendant's motion for reconsideration (ECF No. 47) is **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: July 27, 2022

9