UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

                              Civil Case No. 19-11911

v.                            Honorable Linda V. Parker

PROCTOR FINANCIAL, INC.,

        Defendants.

_____/

## OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE
## (ECF NOS. 53, 54, 55, AND 57)

In this civil rights lawsuit filed on June 27, 2019, the Equal Employment Opportunity Commission ("EEOC") alleges that Proctor Financial, Inc. ("Proctor") retaliated against its former employee, Angela Kellogg ("Kellogg"), in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1 at Pg ID 1.) Specifically, the EEOC alleges that Proctor disciplined Kellogg after she filed a charge with the EEOC alleging race discrimination. (*Id*. at Pg ID 4.) On September 30, 2021, the Court denied the parties' cross-motions for summary judgment. (ECF No. 46.) On October 14, 2021, Proctor filed a motion for reconsideration of the Court's denial of summary judgment (ECF No. 47), and that motion was denied on July 27, 2022 (ECF No. 50). The matter is presently before the Court on the EEOC and Proctor's motions in limine. (ECF Nos. 53, 54, 55, and 57.) The motions have been fully

briefed.  For the reasons below, the Court grants in part and denies in part the

EEOC's first motion in limine (ECF No. 53), denies Proctor's first motion in

limine (ECF No. 54), grants in part and denies in part Proctor's second motion in

limine (ECF No. 55), and denies the EEOC's second motion in limine (ECF No.

57).

## I.    LEGAL STANDARD

"A motion in limine is 'any motion, whether made before or during trial, to

exclude anticipated prejudicial evidence before the evidence is actually offered.'"

*Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v.*

*United States*, 469 U.S. 38, 40 n.2 (1984)).  Prior to the commencement of trial,

courts in this District note that motions in limine serve the following purposes:

> [To] (i) facilitate trial preparation by providing
> information pertinent to strategic decisions; (ii) reduce
> distractions during trial and provide for a smoother
> presentation of evidence to the jury; (iii) enhance the
> possibility of settlement of disputes without trial; (iv)
> provide some additional insulation of the jury from
> prejudicial inadmissible evidence; and (v) improve the
> conditions under which the trial judge must address
> evidence issues by reducing the need for hasty decisions
> during the heat of trial.

*Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-CV-11544, 2015 WL

4934628, at *2 (E.D. Mich. Aug. 18, 2015) (citing *Figgins v. Advance Am. Cash*

*Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007)).

A district court's ruling on such a motion is "a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States* v. *Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984)).  District courts have "broad discretion" over matters involving the admissibility of evidence at trial. *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (quotations and citation omitted).  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce*, 469 U.S. at 41 n.4.

As an initial step, when analyzing admissibility, a court must consider whether the evidence is relevant.  Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The Sixth Circuit emphasizes that the threshold for determining the relevancy of evidence is low.  *See United States v. Lang*, 717 F. App'x 523, 530 (6th Cir. 2017) (stating that "evidence is relevant if it 'advance[s] the ball' one inch") (quoting *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) (describing the relevance standard as "extremely liberal")). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest

probative worth." *United States v. Whittington*, 455 F.3d 736, 738-39 (6th Cir. 2006) (citation omitted).

In contrast, irrelevant evidence is not admissible. Fed. R. Evid. 402. Further, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Robinson v. Runyon*, 149 F.3d 507, 514-–15 (6th Cir. 1998) (Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice.") (emphasis in original). "District courts enjoy 'broad discretion' in making the prejudice determination." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004)).

## II.   ANALYSIS

### A.   Law Regarding the EEOC's Retaliation Claim

As an initial matter, the only claim pending for trial is the EEOC's retaliation claim against Proctor on behalf of the charging party, Angela Kellogg. Title VII prohibits discrimination against an employee because that employee engaged in conduct protected by the statute. *See* 42 U.S.C. § 2000e-3(a); *see also Laster v. City of Kalamazoo*, 746 F.3d 714, 729-30 (6th Cir. 2014) (explaining that Title VII's opposition clause protects individuals who file "formal discrimination

charges with the EEOC," as well as individuals who submit "complaints to management" and engage in "less formal protests of discriminatory employment practices").  Title VII retaliation claims can be established "either by introducing direct evidence of retaliation or by offering circumstantial evidence that would support an inference of retaliation." *Laster*, 746 F.3d at 730 (quoting *Imwalle v. Reliance Med. Prods., Inc*., 515 F.3d 531, 538 (6th Cir. 2008)).  "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle*, 515 F.3d at 543-44 (citing *Abbott v. Crown Motor Co*., 348 F.3d 537, 542 (6th Cir. 2003)).  Absent direct evidence of retaliation, the plaintiff must establish a prima facie case of retaliation by showing: (1) she engaged in protected activity (2) that was known to the defendant, (3) the defendant thereafter took an adverse employment action against the plaintiff, and (4) a causal connection exists between the protected activity and adverse employment action. *Imwalle,* 515 F.3d at 544.

In denying the parties' cross motions for summary judgments, the Court found that a reasonable juror could conclude that the EEOC presented both direct evidence and a prima facie case of retaliation.  (ECF No. 46 at Pg ID 1396-98.) Importantly, the Court also noted that a reasonable juror could find that Proctor raised a legitimate, non-retaliatory reason to support its adverse employment action against Kellogg.  (*Id*. at Pg ID 1400.)  Conclusively, the Court denied the parties'

cross motions for summary judgment, holding that the EEOC ". . . presents enough evidence to create a genuine issue of material fact as to whether [Proctor's] reason for suspending Kellogg was a pretext for unlawful retaliation." (*Id.* at Pg ID 1401.)  The EEOC is ultimately seeking injunctive relief, backpay, compensation for past and future pecuniary and non-pecuniary losses, punitive damages, and attorney costs and fees.  (ECF No. 1 at Pg ID 5-7.)

### B.   The EEOC's First Motion in Limine (ECF No. 53)

The EEOC first asks the Court to exclude the following items:

> (1) Evidence regarding Kellogg's job application, resumes, and prior employment history.

> (2) Kellogg's 2019 notebook.

> (3) Kellogg's social media accounts and employment information within those accounts.

> (4) Evidence regarding civil proceedings and any other lawsuit involving Kellogg.

> (5) Evidence regarding medical conditions that do not relate to damages for emotional harm.

(ECF No. 53 at Pg ID 1469.)  Each item will be addressed in turn.

### i.   Evidence regarding Kellogg's job application, resumes, and prior employment history

The EEOC seeks to exclude evidence and testimony regarding Kellogg's 2008 employment application to Proctor, her resumes, and her employment history including but not limited to her employment with GMAC n.k.a. Ally Financial,

Inc., MGIC Mortgage Services, LLC, and Birmingham Bancorp.  (ECF No. 53 at Pg ID 1484.)  The EEOC argues that this evidence is not relevant to its Title VII retaliation claim or Proctor's asserted defenses and therefore should be excluded pursuant to Federal Rule of Evidence 401.  (ECF No. 53 at Pg ID 1486.)  In response, Proctor maintains that the aforementioned evidence is relevant to its after-acquired evidence defense, Kellogg's alleged damages, and her credibility in this action.  (ECF No. 60 at Pg ID 1632.)

First, the Court already has ruled that the after-acquired evidence defense is inapplicable to the case at bar.  (ECF No. 46 at Pg ID 1405.)  The after-acquired evidence defense limits an employee's remedies where an employer can show it would have been entitled to terminate the employee for severe wrongdoing if it had known of the employee's wrongdoing at the time.  (*Id*. at Pg ID 1403) (citing *McKennon v. Nashville Banner Publ'g Co*., 513 U.S. 352, 362-63 (1995). Importantly, the defense applies only to cases where the employee was *terminated*, not merely *suspended*.  (ECF No. 46 at Pg ID 1405.)  Proctor has failed to present any case law to the contrary.  As the defense is not available, it is not a justification for admitting the evidence in question.

Nevertheless, Proctor maintains Kellogg's employment history is relevant to the issue of damages independent of those limited by the after-acquired evidence defense.  (ECF No. 60 at Pg ID 1632.)  More specifically, Proctor argues Kellogg's

employability is relevant to economic damages she may be entitled to, as well as

the "garden-variety" emotional damages the EEOC seeks on her behalf.  (*Id*. at Pg

ID 1632, 1634.)  In support, Proctor cites to the deposition testimony of Kellogg's

medical treater, who testified that Kellogg stated her emotional issues stemmed in

part from being fired ten years ago, long before she worked for Proctor.  (*Id*. at Pg

ID 1634.)  As such, Proctor maintains this evidence is relevant.

As previously mentioned, the EEOC is seeking injunctive relief, backpay,

compensation for past and future pecuniary and non-pecuniary losses, punitive

damages, and attorney costs and fees.  (ECF No. 1 at Pg ID 5-7.)  Essentially,

Proctor is seeking the option to be able to argue Kellogg's employability in the

event the EEOC seeks economic damages beyond three-days backpay.  This issue

can be raised in the event the EEOC does so.  With regards to the EEOC's claim

for emotional damages, Proctor may introduce the aforementioned testimony from

Kellogg's medical treater, but it will be subject to a limiting instruction.

Specifically, Proctor may only reveal that Kellogg expressed to her medical treater

that her emotional issues stemmed in part from an *incident* that took place ten

years ago.  The fact that Kellogg was *fired* from a previous employer ten years ago

is both irrelevant to the retaliation claim at bar and unduly prejudicial.

Any additional evidence in this category, even if relevant to attack Kellogg's

credibility and character for truthfulness or untruthfulness, is unduly prejudicial

and will likely confuse and mislead the jury.  To elaborate, Proctor's defense to the retaliation claim is that Kellogg lacked integrity and resisted requirements pertaining to her employment with Proctor.  (ECF No. 60 at PG ID 1631.) Importantly, the evidence in question includes disciplinary actions from previous employers.  (*Id*. at Pg ID 1636-37.)  Plainly, the introduction of this evidence, albeit potentially relevant to the issue of credibility, is too closely intertwined with Proctor's defense to not then be characterized as impermissible character evidence. Regardless of Proctor's assertion that it is not using the evidence to show that Kellogg acted in conformity with this behavior when she was employed by Proctor, its introduction will likely confuse and mislead the jury on this issue.  As such, it is inadmissible for this purpose.

Finally, Proctor further contends that the above-listed evidence is admissible for impeachment purposes.  (*Id*. at Pg ID 1629.)  In the event Kellogg testifies as to her work history and her statement contradicts her prior testimony, Proctor may impeach Kellogg with her prior inconsistent statement.  Put simply, "[a] basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."  *Konczal v. Zim Tim, LLC,* No. 19-12275, 2021 U.S. Dist. LEXIS 12023, at *8 (E.D. Mich. Jan. 22, 2021) (citing *United States v. Hale*, 422 U.S. 171, 176 (1975)).

    **ii.**   **Kellogg's 2019 notebook**

The EEOC seeks to exclude Kellogg's notebook which includes notes she made in preparation for her deposition in 2019 about her employment history and a partial timeline and summary of her experiences with Proctor.  (ECF No. 53 at Pg ID 1491.)  More specifically, the notes include references to seven prior employers, two subsequent employers, the bias she experienced working with Proctor, and a list of three individuals whom she referred to Proctor for work but told not to mention her when applying.  (*Id*. at Pg ID 1492-93.)  The EEOC argues these notes are irrelevant, highly prejudicial, and inadmissible hearsay.  (*Id*.)  In response, Proctor asserts it wishes to use the notes only to show that Kellogg "did not list her three-day suspension – the employment action challenged by the EEOC in this action – and that Kellogg has referred candidates for employment with Proctor Financial despite her perception of 'bias'."  (ECF No. 60 at Pg ID 1637.)

The Court fails to see how the notes are relevant to the issues at bar.  It is undisputed that Proctor suspended Kellogg for three days.  Kellogg's notes omitting this fact are not relevant to the EEOC's retaliation claim on her behalf nor Proctor's defense to said claim.  Moreover, Kellogg referring candidates for employment with Proctor has no bearing on the issues before the jury.  Simply put, Kellogg's perception of the events does not bolster the EEOC's claim or void Proctor's potential liability.  *Haydar v. Amazon Corp., LLC*, No. 2:16-CV-13662, 2019 WL 2865261, at *9 (E.D. Mich. July 3, 2019) ("Indeed, in some Title VII

cases the employee may have been wholly unaware of his employer's discriminatory animus[,] but if that animus in fact motivated an adverse action, liability exists.  The employee's perception of what was occurring is not at issue"). As such, the evidence is irrelevant.

### iii.   Kellogg's social media accounts and employment information within those accounts

Next, the EEOC asks the Court to exclude evidence regarding Kellogg's social media accounts and the employment information within.  (ECF No. 53 at Pg ID 1494.)  In response, Proctor asserts it ". . . is not certain that it will be offering evidence of Kellogg's social media, but to the extent that it is necessary for impeachment, the LinkedIn pages would be entirely relevant to prove that Kellogg, once again, provided inaccurate and incomplete licensing information . . . or otherwise improperly misrepresented her licensing status on social media."  (ECF No. 60 at Pg ID 1640-41.)

As previously discussed, Kellogg's employment history is not relevant to the retaliation claim at bar.  Moreover, Kellogg allegedly misrepresenting her licensing information online has no bearing on whether Proctor's adverse employment action was pretextual for a Title VII retaliation claim.  However, in the event Kellogg testifies inconsistently with her prior testimony, the evidence may be used for impeachment purposes only.

### iv.   Evidence regarding civil proceedings and any other lawsuit involving Kellogg

Next, the EEOC asks the Court to exclude evidence of other civil proceedings or lawsuits involving Kellogg.  (ECF No. 53 at Pg ID 1496.)  In support, the EEOC asserts this evidence is irrelevant and impermissible character evidence Proctor is attempting to use "to undermine the merits of this case" and to "mislead the jury into believing that Kellogg is irresponsible or litigious (even though the EEOC is the plaintiff here)."  (*Id.* at Pg ID 1497-98.)  In response, Proctor asserts it wishes to introduce evidence of the lawsuit Kellogg filed alleging race discrimination against her former employer Birmingham Bancorp Mortgage ("Bancorp").  (ECF No. 60 at Pg ID 1641.)  Proctor asserts its intent is to show that despite initially testifying that her employment ended with Bancorp because it closed its doors, Kellogg was actually involuntarily terminated for unsatisfactory work performance, which she later admitted.  (*Id.*)  Moreover, Proctor asserts Kellogg was dishonest in her complaint as to her dates of employment and reasons for separation in that lawsuit.  (*Id.* at Pg ID 1642.)  This, Proctor contends, is relevant to Kellogg's character for truthfulness or untruthfulness, and why the Court ". . . should allow inquiry into – at a minimum, the filing date, dates of employment, and reasons for separation – on cross-examination of Kellogg, as provided for by Fed[eral] R[ule of] Evid[ence] 608(b)."  (*Id.* at Pg ID 1644.)

First, the EEOC correctly asserts that "the *EEOC* brought this lawsuit as a result of Kellogg's charge.  Consequently, Proctor should not be able to use other court proceedings in which *Kellogg* has been a party to undermine the merits of this case." (ECF No. 53 at Pg ID 1497.)  Second, Kellogg's previous lawsuit against Bancorp was a racial discrimination case, which is not what is before the Court today.  Finally, albeit relevant to Kellogg's character for truthfulness or untruthfulness, the probative value of this evidence is outweighed by the highly prejudicial effect it would have on the EEOC.  To elaborate, character evidence is impermissible to show that a person acted in conformity with certain behavior per Federal Rule of Evidence 404.  Although unintentionally, it would confuse the jury as to both Kellogg's behavior in the workplace and her apparent litigiousness, which is impermissible character evidence.  As such, it should be excluded.

> ### v. Evidence regarding medical conditions that do not relate to damages for emotional harm

Finally, the EEOC asks the Court to exclude evidence regarding medical conditions that do not relate to damages for emotional harm.  (*Id*.)  The EEOC offers in a footnote that " . . . evidence related to the EEOC's emotional distress claim can be submitted after liability has been established," if the Court so chooses.  (*Id*. at Pg ID 1499.)  In response, Proctor argues this evidence is relevant to determining whether Proctor was the source of Kellogg's alleged emotional distress, and whether she is entitled to emotional damages at all.  (ECF No. 60 at

Pg ID 1634, 1646.)  Proctor asserts it ". . . must be able to defend against the claims of emotional distress damages that Kellogg has put at issue in this case." (*Id.* at Pg ID 1646.)  In so doing, Proctor states it only intends to introduce evidence of Kellogg's medical conditions to the extent that they were revealed by Kellogg's own deposition testimony or written discovery responses, or were otherwise provided by the medical providers Kellogg identified as having treated her for emotional distress.  (*Id.*)  Proctor reasons that "[s]uch evidence and testimony would assist the jury in making factual determinations regarding the EEOC's allegation that Proctor's conduct caused Kellogg to suffer emotional distress."  (*Id.*)

In the order denying the cross motions for summary judgment, the Court found that the EEOC, on behalf of Kellogg, presented sufficient evidence to "warrant[] the presentation to a jury of whether Kellogg is entitled to emotional distress damages."  (ECF No. 46 at Pg ID 1407.)  As such, Proctor is entitled to raise evidence to the contrary to assist the jury in its potential determination of emotional damages.  However, neither party requests with any specificity the medical evidence they are seeking to exclude/admit.  As such, the Court cannot make a determination at this time and will raise the issue at the final pretrial conference.

### C.   Proctor's First Motion in Limine (ECF No. 54)

Proctor seeks to exclude evidence of or attorney statements relating to "stray remarks" by a non-decisionmaker.  (ECF No. 54 at Pg ID 1501.)  More specifically, Proctor asks the Court to exclude the introduction of the following remarks:

> (1) On August 3, 2016, Paul Glantz described Kellogg's EEOC charge in an email to Lisa Golden as "what a sad waste of time responding to such a specious claim! Thanks for holding your nose and handling this, Lisa."

> (2) On September 12, 2016, Glantz emailed Golden with a carbon copy to Mike Cox and Mohamed Elewa that: "I think Jim is extraordinarily naive and doesn't realize the toxicity of this individual. (I'm concerned if he can be an effective manager given said characteristic.) Sport-f#cking your employer with baseless claims is not an act of benevolence or demonstrative of showing consideration towards others. We'll wait her out."

> (3) Also, on September 12, 2016, Glantz emailed Golden and Elewa with a carbon copy to Mike Cox that: "I think we should wait this out, see what the EEOC says, and slow play our hand. There is no substantial upside to brooming her immediately. (It will be perceived as retaliatory). However, I think Jim needs to wake up in his dealings with her."

> (4) Also, on September 12, 2016, Glantz emailed Golden and Elewa with a carbon copy to Mike Cox that: "Once she is the only one that isn't licensed, it will be a lot easier. Let's bide our time."

> (5) Any other anticipated testimony of [the EEOC's] witnesses that a Proctor Financial employee, who was not a decisionmaker, allegedly made retaliatory comments toward Kellogg.

(*Id*. at Pg ID 1510.)

Proctor asserts that the remarks in emails one through four should be excluded pursuant to Federal Rules of Evidence 402 and 403 because they are both irrelevant and unduly prejudicial. (*Id*. at Pg ID 1515, 1520.) In support, Proctor analyzes the following four factors the Sixth Circuit has established to decide whether alleged "stray remarks" should be excluded:

> [1] whether the comments were made by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision-making process; [3] whether they were more than merely vague, ambiguous, or isolated remarks; and [4] whether they were proximate in time to the act of termination.

(*Id*. at Pg ID 1516 (quoting *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)); *see also* (*Walker v. Daimler-Chrysler Corp*., No. 02-CV-74698-DT, 2005 WL 8154351, at *13 (E.D. Mich. Nov. 16, 2005) (applying *Cooley* when analyzing race discrimination). In analyzing these factors, Proctor maintains that Paul Glantz was not a decisionmaker, his remarks were too ambiguous to be relevant, they were not connected to the decision-making process, and they were not made sufficiently close in time to the decision to suspend Kellogg. (*See generally* ECF No. 54.) In response, the EEOC cites to this Court's determination that the aforementioned emails are direct evidence of retaliation. (ECF No. 58 at

Pg ID 1593.)  Therefore, the EEOC argues they are relevant, and their probative value far outweighs any prejudicial effect.  (*Id*. at Pg ID 1594.)

With regards to remarks one through four, this evidence is relevant to whether a causal connection exists between the protected activity and adverse employment action.  *Imwalle,* 515 F.3d at 544.  As previously determined by this Court, the ". . . emails reflect a clear intent to terminate or at least take some adverse employment action against Kellogg in response to her protected activity." (ECF No. 46 at Pg ID 1397.)  With regards to Proctor's renewed assertion that Glantz was not a decisionmaker, the Court reiterates its response to that argument when denying the cross motions for summary judgment:

> . . . [a] reasonable juror could not agree.  The emails reflect that Glantz and Golden made it clear to Harris what the plan of action would be, even though Harris, as Kellogg's supervisor, was the one who had to execute the adverse action.

(*Id*.)  Finally, Proctor's contention that the remarks are irrelevant because they were made too long before the decision to suspend was implemented lacks merit. (ECF No. 54 at Pg ID 1517-18.)  Comments such as "we'll wait her out" or "let's bide our time" indicate retaliatory motive, and "the fact that the 'opportunity' took longer than expected to arise[,] does not undermine the retaliatory motive expressed."  (ECF No. 46 at Pg ID 1398.)

Proctor's alternative assertion that any "marginal" relevance of the remarks is substantially outweighed by the risk of unfair prejudice to Proctor is also unpersuasive.  Proctor cites to a ruling within this district which states that "the stray comments of a non-decisionmaker . . . are unduly prejudicial because they would confuse the jury as to the actual issue of the case."  (ECF No. 54 at Pg ID 1521 (quoting *Greenfield v. Sears, Roebuck & Co.*, No. 04-cv-71086, 2006 U.S. Dist. LEXIS 74299, at *26 (E.D. Mich. Oct. 12, 2006).)  However, this Court has already determined that a reasonable jury might find that Glantz was a decisionmaker.  Moreover, as the Court also already determined, a reasonable juror could conclude that they were not "stray comments" but direct evidence of retaliation.  Notably, "virtually all evidence is prejudicial, or it isn't material." *Applewhite v. FCA US LLC*, No. 17-cv-11132, 2022 WL 1538396, at *2 (E.D. Mich. May 16, 2022) (quoting *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983)).  Evidence becomes inadmissible only "if there is a danger of *unfair* prejudice, not mere prejudice."  *Id.* (emphasis in original).  As such, the Court denies Proctor's motion in limine as it pertains to remarks one through four.

With regards to the fifth item, Proctor asks the Court to exclude "any other anticipated testimony of [the EEOC's] witnesses that a Proctor Financial employee, who was not a decisionmaker, allegedly made retaliatory comments

toward Kellogg." (ECF No. 54 at Pg ID 1519.) However, Proctor does not identify any specific employee or testimony in making this request. "Where a motion *in limine* simply asserts objections without tying them to specific evidentiary items, the Court properly may deny it as overbroad and insufficiently specific." *Fakhoury v. O'Reilly*, No. 16-13323, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022) (collecting cases). As such, Proctor's motion in limine as it pertains to this item is also denied. If specific evidence is offered at trial and should be excluded under the Federal Rules of Evidence, Proctor may renew its motion then.

### D.    Proctor's Second Motion in Limine (ECF No. 55)

Next, Proctor asks this Court to exclude "either evidence of or attorney statements relating to Kellogg's allegations of race discrimination, economic damages beyond three-days pay, and other lawsuits/charges against [Proctor]." (ECF No. 55 at Pg ID 1524.) Each will be addressed in turn.

### i.    Evidence of Racial Discrimination

Proctor wishes to exclude the following as it pertains to Kellogg's allegations of race discrimination:

> (1) The charge that Kellogg filed with the EEOC on July 6, 2016 (ECF No. 39-2, Page ID. 726);

> (2) The Amended charge that Kellogg filed with the EEOC on October 24, 2016 (ECF No. 39-8, Page ID. 733);

(3) Testimony from Susan Wardzinski, Stephen Charrette, and Christian Murphy regarding the promotion Kellogg was denied and underlying her charge;

(4) Other documents contained in the EEOC's administrative file, as disclosed by the EEOC in its Initial Disclosures;

(5) Any other witness testimony regarding Kellogg's allegations of discrimination; and

(6) Proctor Financials' Position Statement dated August 16, 2016 (ECF No. 39-15, Page ID. 742-48).

(*Id*. at Pg ID 1541.)  Proctor asserts that none of the aforementioned evidence can assist the EEOC in establishing its retaliation claim and therefore it should be excluded in accordance with Federal Rule of Evidence 402.  (*Id*. at Pg ID 1542.) Moreover, Proctor asserts that even if the evidence is relevant, it should be excluded because it is unduly prejudicial and will confuse and mislead the jury. (*Id*. at Pg ID 1544.)  Importantly, Proctor also asserts that the EEOC wishes to introduce this evidence "despite recognizing that there was no merit to a discrimination claim brought on Kellogg's behalf."  (*Id*. at Pg ID 1541.)

In response, the EEOC argues that

. . . [c]ontrary to what Proctor argues, [the EEOC] does not intend to elicit testimony regarding whether Proctor discriminated against Kellogg because of her race by denying her promotional opportunities.  However, [the EEOC] is entitled to present evidence that Kellogg alleged violations of Title VII (race discrimination) in her initial

charge, and that those allegations triggered Proctor's
retaliatory motive and actions.

(ECF No. 59 at Pg ID 1616-17.) The EEOC further argues that evidence of racial

discrimination should be admissible for rebuttal purposes to "contest Proctor's

inaccurate assertion that [the EEOC] concluded Kellogg's race discrimination

claims were meritless."[1]  (*Id*. at Pg ID 1617.)  Finally, the EEOC argues that

Proctor's August 16, 2016 Position Statement is relevant to the EEOC's retaliation

claim "because it demonstrates that months prior to [Kellogg] being issued a

written disciplinary action and being suspended, Proctor said Kellog's

'performance was satisfactory overall' even though Kellogg had only obtained two

of the five required licenses."  (*Id*. at Pg ID 1616.)

To support their assertions, both parties rely on *Funk v. City of Lansing*, No.

1:17-cv-514, 2021 U.S. Dist. LEXIS 232090, at *1 (W.D. Mich. Sep. 24, 2021).  In

that case, the district court allowed evidence of the plaintiff's previously dismissed

Title VII constructive discharge claim because the facts surrounding that claim and

plaintiff's retaliation claim were intertwined.  *Id*. at *3.  In the same ruling

however, the court excluded evidence relating to the plaintiff's dismissed claims

---

[1] The EEOC's determination letter very clearly states that "there exists sufficient
credible evidence to suggest that since June 2016, [Kellogg] was denied
promotional opportunities . . . because of her race in violation of Title VII."  (ECF
No. 57-3 at Pg ID 1582.)

involving racial discrimination and failure to promote based on race, because they were not relevant to the remaining retaliation claim and were unfairly prejudicial to the defendant.  *Id*. at 4.

The EEOC argues that, like the plaintiff's constructive discharge in *Funk*, the facts included in Kellogg's EEOC charge are closely intertwined with the EEOC's retaliation claim and therefore should be admissible.  (ECF No. 59 at Pg ID 1618.)  Conversely, Proctor argues that the evidence is more akin to the evidence of racial discrimination the *Funk* court found irrelevant to a claim of retaliation and therefore inadmissible.  (ECF No. 63 at Pg ID 1690.)

With regards to: (1) the charge that Kellogg filed with the EEOC on July 6, 2016, (2) the amended charge that Kellogg filed with the EEOC on October 24, 2016, (3) testimony from Susan Wardzinski, Stephen Charrette, and Christian Murphy regarding the promotion Kellogg was denied and underlying her charge, (4) other documents contained in the EEOC's administrative file, as disclosed by the EEOC in its initial disclosures, and (5) any other witness testimony regarding Kellogg's allegations of discrimination, the Court finds these evidentiary items to be irrelevant and therefore inadmissible.

First, Kellogg's EEOC charge is only "relevant and admissible insofar as that [it] occurred, but not beyond that." *Funk*, LEXIS 232090, at *4.  The EEOC may not introduce evidence of racial discrimination or the substance of Kellogg's

charge because it is not relevant to the retaliation claim at bar.  Moreover, its

introduction would be highly prejudicial to Proctor, and unnecessarily so.  The

relevant inquiry before the jury is whether (1) Kellogg engaged in protected

activity (2) that was known to Proctor, (3) Proctor thereafter took an adverse

employment action against Kellogg, and (4) a causal connection exists between the

protected activity and adverse employment action.  *Imwalle,* 515 F.3d at 544.

Thereafter, the inquiry becomes whether Proctor raises a legitimate, non-retaliatory

reason for its adverse employment action, and whether this assertion is a pre-text

for retaliation.  *Yazdian v. ConMed Endoscopic Tech., Inc*., 793 F.3d 634, 650 (6th

Cir. 2015).  As such, evidence pertaining to racial discrimination is irrelevant and

will likely confuse the jury on these issues.  Thus, if Kellogg's charge with the

EEOC is admitted into evidence, it must be redacted so that the factfinder does not

know the contents that formed the basis of Kellogg's charge with the EEOC.

However, should Proctor imply or assert that the EEOC deemed Kellogg's racial

discrimination claim to be meritless, the EEOC is entitled to introduce evidence to

the contrary.

With regards to Proctor's Position Statement from August 16, 2016, the

Court denies Proctor's request to exclude this item.  Proctor's August 16, 2016

Position Statement is relevant to the EEOC's retaliation claim because it

demonstrates that months prior to Kellogg being issued a written disciplinary

action and being suspended, Proctor felt Kellogg's performance was satisfactory overall, despite Kellogg only having obtained two of the five required licenses. (ECF No. 59 at Pg ID 1616.)  Against this backdrop, the evidence is relevant to Proctor's animus and motive for retaliation.  Moreover, though this item is undoubtedly prejudicial, it is not unfairly so.

### ii.    Economic Damages Beyond Three Days Pay

Next, Proctor asks the Court to exclude evidence of its immediate acceptance of Kellogg's voluntary resignation, including the November 17, 2016 email (and any testimony) relied upon by the EEOC to establish same – notwithstanding the company's payment in lieu of notice.  (ECF No. 55 at Pg ID 1548.)  For context, the November 17, 2016 email is an email from Michael Cox, Senior Vice President of Proctor, to Lisa Golden, who is the Human Resources Manager of Proctor.  The email recounts Michael Cox's conversation with Kellogg in which he informed her of Proctor's immediate acceptance of her resignation. (ECF No. 39-21, Pg ID. 761.)  Proctor requests that this evidence be excluded in anticipation of the EEOC asking for economic damages beyond the three-day suspension.  (ECF No. 55 at Pg ID 1548.)  In response, the EEOC argues that evidence that Proctor ". . . immediately accepted Kellogg's resignation, refused to let her work out her two-week notice, and had security escort her from the premises after she had worked there for years, is relevant to [the EEOC's]

retaliation claim, including [the] compensatory and punitive damages and injunctive relief" the EEOC is seeking.  (ECF No. 59 at Pg ID 1620.) The Court agrees with the EEOC that this evidence is relevant to both the EEOC's retaliation claim and to the issue of damages because it reflects retaliatory animus. Moreover, though it is prejudicial to Proctor, it is not unfairly so.

### iii.    Evidence of Other Lawsuits and Charges Against Proctor

With regards to Proctor's request that the Court exclude evidence and statements regarding other lawsuits and charges against it, the EEOC asserts that this is too broad a category of evidence to be properly denied.  (ECF No. 59 at Pg ID 1621.)  Moreover, the EEOC asserts it does not intend to introduce evidence of other lawsuits or charges.  (*Id*.)  Because the EEOC does not intend to introduce evidence to this effect, the motion in limine as it pertains to this evidentiary item is denied as moot.

### E.    The EEOC's Second Motion in Limine (ECF No. 57)

Next, the EEOC asks the Court to exclude:

> (1) Statements from counsel or testimony from Proctor that the [EEOC] determined that Angela Kellogg's allegations of race discrimination "lacked merit" or that the [EEOC] determined her EEOC charge was "meritless." *See e.g., [Proctor's] Brief in Support of [Proctor's] Motion in Limine*, ECF No. 55, Page ID. 1534-35, 1541, 1546, 1547.
>
> (2) Statements from counsel or testimony that Kellogg engaged in "fraud" or other similar statements to suggest

she engaged in criminal behavior related to Proctor's
demand that she produce a copy of her test results.

(ECF No. 57 at Pg ID 1561.)

With regards to the first item, the EEOC asserts that it does not intend to

introduce its pre-determination or determination letters at trial.  (*Id*. at Pg ID 1572.)

However, "should . . . Proctor contend during trial that [the EEOC] determined

Kellogg's race allegations . . . were meritless, [the EEOC] should be allowed to

introduce these documents in rebuttal."  (*Id*.)  In response, Proctor maintains it

only intends to raise this argument in the event the EEOC introduces evidence

alluding to racial discrimination on the part of Proctor.  (ECF No. 65 at Pg ID

1715.)  As previously discussed, the EEOC is precluded from introducing evidence

relating to the alleged racial discrimination Kellogg suffered.  Therefore, the

motion as it pertains to this item is moot.

With regards to the second item, the EEOC argues that Proctor's use of the

words "fraud" and "cover-up" suggest lawlessness and criminality and therefore

should be excluded.  (*Id*. at Pg ID 1574.)  In response, Proctor argues this evidence

is relevant to their defense that Kellogg was suspended for non-retaliatory reasons.

(ECF No. 65 at Pg ID 1711-12.)  Proctor maintains that the witnesses who testified

to this effect were lay witnesses and will be subject to lay witness evidentiary

rules.  (*Id*. at Pg ID 1711.)  Therefore, Proctor argues no unnecessary legal

conclusions will be drawn from its admission, and it should be admitted because it is directly relevant to the retaliation claim at bar.  (*Id*. at Pg ID 1711-12.)

The Court denies the EEOC's motion in limine as it pertains to this item. Proctor is correct in its assertion that evidence of Kellogg's alleged misrepresentation about her examination score is directly relevant to the EEOC's retaliation claim.  The Court already determined in its order denying the cross motions for summary judgment that a reasonable jury might find this to be a legitimate, non-retaliatory reason for Kellogg's suspension.  (ECF No. 46 at Pg ID 1400.)  The evidence is undoubtedly prejudicial to the EEOC's claim, but "[e]vidence that is prejudicial only in the sense that it paints the [plaintiff] in a bad light is not unfairly prejudicial pursuant to Rule 403."  *United States v. Cobb*, 432 Fed. Appx. 578, 587 (6th Cir. 2011) (quoting *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006)).  Therefore, regardless of the connotation the terms "fraud" or "cover-up" imply, the Court finds it unnecessary to exclude the evidence on this basis as it is not so unduly prejudicial as to warrant exclusion. However, the Court will employ a limiting instruction to the use of these terms so that they are understood by the jury to be their ordinary, non-legal meaning in the context of this case.

## III.   CONCLUSION

For the reasons stated, the Court is **GRANTING IN PART AND DENYING IN PART** the EEOC's first motion in limine (ECF No. 53) in that Proctor may offer only certain evidence and only in accordance with the guidelines discussed in this decision.  Next, for the reasons stated, the Court is **DENYING** Proctor's first motion in limine (ECF No. 54).  Further, for the reasons stated, the Court is **GRANTING IN PART AND DENYING IN PART** Proctor's second motion in limine (ECF No. 55) in that the EEOC may offer only Proctor's Position Statement dated August 16, 2016 and only in accordance with the guidelines discussed in this decision.  Finally, for the reasons stated, the Court is **DENYING** the EEOC's second motion in limine (ECF No. 57).

**IT IS SO ORDERED.**

s/ Linda V. Parker_____
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: December 6, 2022